# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DANIELLE HALL, Individually, As Next Friend for AMH-S, a Minor Child, and As Administrator of the Estate of Matthew Sopcic, § § § § §<br><br>*Plaintiff,* § §<br><br>v. § §<br><br>WITRON INTEGRATED LOGISTICS, INC., WITRON LOGISTIK + INFORMATIK GMBH, d/b/a WITRON LOGISTIK + INFORMATIK GMBH CORP., and FAS FORDERANLAGEN SYSTEME GMBH, § § § § § § § §<br><br>*Defendants.* § | Civil Action No.  4:21-CV-477<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Witron Logistik + Informatik GmbH and FAS FörderAnlagen Systeme GmbH's Motion for Summary Judgment (Dkt. #64). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED.**

### BACKGROUND

This case arises out of a workplace incident that resulted in an employee being strangled to death by a conveyor system. Plaintiff Danielle Hall ("Hall"), individually, and as next friend of AMH-S, a minor child, and as administrator of the estate of Matthew Sopcic ("Sopcic"), filed suit against three entities alleging various theories of products liability and negligence, arguing that the entities are at fault for Sopcic's death (Dkt. #54). Hall named the following three Defendants: (1) Witron Integrated Logistics, Inc. ("Witron Logistics"), who was in charge of the conveyor system in the Denton office; (2) Witron Logistik + Informatik GmbH d/b/a Witron Logistik + Informatik

GmbH Corp. ("Witron Logistik"), who was one of the entities tasked with designing and installing the conveyor system; and (3) FAS FörderAnlagen Systeme GmbH ("FAS"), who also was tasked with designing and installing the conveyor system (Dkt. #54 ¶¶ 45–55).

On August 4, 2019, Sopcic was at his job at the Target Distribution Center in Denton, Texas (Dkt. #54 ¶ 6). Sopcic primarily worked as a forklift operator, but on occasion, he would also work as a "backup utility assistant" (Dkt. #54 ¶ 38). When Sopcic was serving in the role as backup utility assistant, his main duties included sweeping, cleaning, and relevant here, disposing of the trash in the freezer area (Dkt. #54 ¶ 38). The Target Distribution Center placed its conveyor system in the freezer area, which consisted of an automatic system that was intended to transport Target's products. On the day of the incident, Sopcic was working in the freezer area when his hoodie became entangled in the conveyor driveshaft. Sopcic was raised in the air, where he was hanging from the conveyor system and being strangled as a result. Eventually, another employee found Sopcic and contacted help. Sopcic was rushed to the emergency room where he was kept on life support for six (6) days. On August 9, 2019, Sopcic was taken off life support and died at the hospital, as he was declared brain-dead (Dkt. #54 ¶ 56).

Witron Logistik and FAS manufactured and installed the conveyor system over a decade before the incident in question occurred. However, back in 2012, Target retained a safety inspection company to conduct a risk assessment of the hazards that were present in the conveyor system (Dkt. #68 ¶¶ 2–3). This inspection identified a hazard in that the conveyor driveshaft was not properly guarded (Dkt. #68 ¶ 4). Although the original design that was created by Witron Logistik and FAS did not have specific guards on the conveyor driveshaft themselves, it did have a metal fence that was intended to offer some protection, serving as a barrier to remedy the entanglement hazard (Dkt. #64 ¶¶ 5–6).

At some unspecified time after the initial installation but before the incident in question, Witron Logistic altered the "protective fencing" that was placed on the outside of the conveyor system (Dkt. #64 ¶ 9). Witron Logistic installed red netting to cover the area in front of the conveyor driveshaft where the "full-height" metal fence used to be (Dkt. #64 ¶ 5). Witron Logistik and FAS were not informed about this change (Dkt. #64 ¶ 8). Witron Logistic's employees were aware about this alteration, yet, on the day in question, the red netting remained in place. On August 4, 2019, the conveyor system in the freezer area of the Target Distribution Center appeared like the photo taken here:



(Dkt. #64, Exhibit 1 at p. 2). The subject of this Order contains *only* the decision not to include the guards on the ends of the initial design for the conveyor driveshaft. The decision to use red

netting instead of properly maintaining the metal fence is not at issue with the Defendants that filed the present motion.

On December 22, 2022, Witron Logistik and FAS filed the pending motion for summary judgment, arguing that the Court should dismiss all claims against both Defendants (Dkt. #64). On January 27, 2023, Hall filed a response, opposing the request, stating that there are genuine issues of material fact for the claims to be submitted to a jury (Dkt. #68). On February 3, 2023, Witrok Logistik and FAS filed a reply, standing by their initial arguments and raising objections to certain facts that were raised by Hall in the response (Dkt. #70). On February 8, 2023, Hall filed a sur-reply and responded to the objections made in the reply (Dkt. #71).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of

material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Hall filed the lawsuit against three Defendants under two theories explaining liability (Dkt. #54 ¶¶ 45–55). First, Hall named Witron Logistics as a Defendant. Hall's theory of liability against Witron Logistics alleges that although it placed some red netting outside the conveyor driveshaft, the party is negligent for failing to adequately protect employees from the entanglement

hazard. Under this theory, Hall alleges that the partial replacement of the fence in that conveyor area with netting, as well as the improper maintenance of the fence that was installed, among other reasons, consisted of a breach of its duty to employees (Dkt. #54 ¶ 45). Hall's second theory of liability is directed at the remaining Defendants—Witron Logistik and FAS (collectively, the "Fence Defendants"). Hall alleges that although the Fence Defendants created a design with a full-height metal fence on the exterior, the design still suffered a defect at the time it was made, and the parties were negligent in connection with this design. Specifically, because the conveyor driveshaft failed to include any guards or some sort of cover to prevent the exact type of scenarios such as what happened here, the conveyor system was unreasonably dangerous, as it created an entanglement hazard (Dkt. #54 ¶¶ 50–51).

The Fence Defendants have brought this motion for summary judgment and raise two principal arguments. First, the Fence Defendants argue that there is no support for a finding that the conveyor driveshaft with a metal fence was unreasonably dangerous at the time the product was created. The main argument here is that the alleged defect cannot be shown as necessary utilizing the risk utility analysis. The Fence Defendants' second argument is that there is no evidence that the lack of a guard was a producing cause or proximate cause of Sopcic's death. As a preliminary matter, the Court will begin by addressing the objections that the Fence Defendants raised in their reply brief, arguing that Hall raised improper facts in the response that should not be considered by the Court.

### I. Witron Logistik and FAS's Objections

The Fence Defendants raise various objections to the facts that Hall uses in their arguments raised in the response. The Court will group these objections together and classify them into two groups. First, there are objections that argue certain facts are inadmissible opinion testimony under Rule 702. Then, there are objections regarding the relevancy of post-installation conduct.

The first group of Fence Defendants' objections mainly concern facts that they allege are "expert" testimony that does not pass muster according to the language of Federal Rule of Evidence 702 (Dkt. #70). Specifically, the witnesses objected to are Elena Dominguez, a professional engineer who performed a risk assessment of the alleged defective machinery; Julian Roederer, Witron Logstik's project manager over the Target Distribution Center; Jim Diefendorf, Witron Logistics' North American Safety Manager; and Oliver Goeschel, Witron Logistik's head of safety at the Target Distribution Center, who ultimately decided the conveyor driveshaft would be designed without a guard or any type of cover (Dkt. #68 at pp. 7–11; Dkt. #70 at pp. 7–8). The facts at issue consist of safety reports that recommended guards or protective covers and the ultimate decision to not have them installed (Dkt. #68 at pp. 7–11).[1]

The Court notes that the witnesses at issue mainly consist of Defendants' employees, and based on the facts presented, the witnesses have a unique position in this case. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 459 (5th Cir. 1996) (discussing witnesses that have "dual status as both a lay and expert witness" and the limitations that come with such a title). While providing some testimony that would likely be classified as specialized knowledge under Rule 702, the Court also recognizes that these are fact witnesses relevant to this case. As employees, the witnesses will be permitted to disclose facts that are based on "first-hand knowledge or observations" and opinions that the witness is "qualified to testify as an expert." *Id.*; *Van Winkle v. Rogers*, No. 6:19-CV-01264, 2022 WL 4127440, at *1 (W.D. La. Sept. 9, 2022). With this understanding, the Court will

---

[1] "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible, the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp.*, L.L.C., 859 F.3d 353, 355 (5th Cir. 2017) (cleaned up) (citations omitted). And it is the obligation that the party submitting the evidence must show it "will be possible to put the information into an admissible form." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 522 (5th Cir. 2021). Here, although the cited evidence refers to mainly deposition testimony, the contents of the testimony can be presented with Dominguez's final report and the live testimony of the dual status witnesses. Accordingly, the Court finds that the form of the evidence will not be an issue for the purposes of this Order.

7

allow the witness' opinions that were provided to the Defendants after an inspection of the machinery at issue, as such testimony will be admissible under Federal Rules of Evidence 702 and 701. *See Van Winkle*, 2022 WL 4127440 (analyzing whether the witness has firsthand knowledge by personally inspecting the remnants of the accident and concluding that because he did not, any testimony regarding causation would require an analysis under Rule 702). Additionally, the Court will allow the facts concerning the decision not to include guards or protective covers, as the Court finds that specialized knowledge is not necessary to offer such a decision. The decisions are admissible under Rule 701 because they consist of decisions that the employees themselves made against the installation of covers based on their firsthand knowledge of the various facts and data that were provided to them.

The Fence Defendants also argue that the facts should be excluded because the witnesses use the words "felt" and "seems," and that the hypotheticals given are inaccurate (Dkt. #70 ¶¶ 1–2, 6). These arguments are a matter of weight, not admissibility. *See Urda v. Valmont Indus., Inc.*, 561 F. Supp. 632, 640 (M.D. La. Sept. 21, 2021). If these opinions are given at trial, the Fence Defendants will have a chance to cross-examine the witness regarding his or her word choice and the strength of a hypothetical. Therefore, the Court will not strike these opinions, as no valid basis against their admissibility has been raised.

It will be up to the jury to weigh the credibility of each of these witnesses, but as of now, the Court will not exclude the testimony from these defendant employees under Rule 702. The Fence Defendants' request will be overruled, as it relates to the alleged expert testimony.

Addressing the "post-installation" objection, the Fence Defendants argue that any mention of the maintenance of the metal fence that occurred after the fence was installed is irrelevant (Dkt.

#70 ¶ 4). The Court agrees. However, the Court does not agree with the Fence Defendants that all the listed evidence would fall under that ruling.

Under Federal Rule of Evidence 402, evidence that is irrelevant—meaning it has any tendency to make a fact in the case more or less probable—must be excluded. *See Smith Tank & Steel, Inc. v. Frio Water Holdings, Ltd.*, No. 5:18-CV-202, 2020 WL 13490862, at *6 (N.D. Tex. Jan. 3, 2020) (holding that certain opinions were irrelevant because the partial motion for summary judgment did not address the specific issue those would make those opinions relevant). It is important to remember that for the purposes of this Order, Hall has alleged multiple theories as valid options to prove her case. Here, the actual maintenance of the conveyor system after the design was made and installed is relevant for this lawsuit only towards the negligence claims and the actions by Witron Logistics. Since Hall's theories as to her negligence claims against Witron Logistics are not the subject of this Order, the Court will sustain that objection and the facts included in paragraph 8 of Hall's response will not be considered.

But, the Fence Defendants attempt to group this objection with the facts included in paragraph 6 (Dkt. #70 ¶ 4). In paragraph 6 of Hall's response, Hall points out that a defendant employee, Julian Roederer, was aware that fences have been knocked down or damaged in the past when deciding whether to install the protective guards. The Court finds that this "post-installation conduct" is not actually post-installation conduct at all, and the facts are relevant both to the state of mind of Witron Logistik and their subsequent alleged breach, at the time the ultimate decision was made not to install the guards or a proper cover of the conveyor driveshaft. Therefore, the Court will deny the Fence Defendant's objection as it relates to the facts that were included in paragraph 6 of Hall's response.

The Court will now address the Fence Defendants' substantive arguments that were raised in requesting summary judgment.

## II. A Genuine Issue of Material Fact Exists Regarding a Finding of a Design Defect

The first substantive point that is discussed by the parties is whether the evidence supports a finding of a design defect as originally designed. Since the Fence Defendants made the decision to include protective fencing, they contend that the conveyor driveshaft was safe and not unreasonably dangerous. Hall responds and states that simply because "that design was certainly safer than the altered condition of the conveyor driveshaft at the time of Sopcic's death," it does not preclude a finding that the original design was unreasonably dangerous (Dkt. #68 at p. 12). The Court agrees with Hall.

To make this determination whether a product is unreasonably dangerous, courts generally apply a risk-utility analysis, which includes five factors that must be viewed holistically. *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1041–42 (5th Cir. 2011) (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997)). The five factors are as follows:

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer.

*Grinnell*, 951 S.W.2d at 432. Typically, the question of whether a product is unreasonably dangerous is a fact question for the jury to decide, although there are limited circumstances in which this may be determined as a matter of law. *Nelson v. Sunbeam Products, Inc.*, 579 F. Supp. 3d 857, 866 (E.D. Tex. 2022); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 312 (Tex. 2009).

Here, the Court finds it unnecessary to go factor by factor to determine there is a fact issue in this case. Hall points out four facts that the Court finds are sufficient to conclude that there is a genuine issue of material fact regarding whether the product was unreasonably dangerous as designed. The facts consist of the following:

- According to OSHA, unguarded or inadequately guarded machinery accounts for approximately 18,000 work-related injuries per year, including amputations, crush injuries, and lacerations, as well as 800 deaths per year;

- During a risk assessment of the Witron conveyor system back in 2012, Elena Dominguez of Pilz Automation Safety specifically noted an entanglement hazard presented by the fenced-in driveshaft, stating that the "probability of occurrence of a hazardous event" could be reduced from "1.25" to as little as "0.05" with the installation of a guard over the shaft;

- Russ Rasnic—Plaintiff's expert—provided an opinion that the original design of the conveyor, which included the use of a removable fence, was susceptible to being damaged in the ordinary course of business. Therefore, the failure to include a fixed guard in the original design presented an unacceptably high risk of entanglement injuries and death; and

- According to Russ Rasnic, workers performing janitorial duties, like Sopcic on the day of the incident, were not aware that an unguarded driveshaft was behind the netting (which had replaced the fencing), and they lacked an appreciation of the grave dangers the rotating driveshaft presented, particularly to one wearing loose-fitting clothing, as there was no warning of an entanglement hazard.

(Dkt. #68 at pp. 13–14, 16). Based on these facts presented, the Court is of the opinion that there has been sufficient evidence provided to send this question to the jury.

The Fence Defendants rebutted this evidence, stating that Elena Dominguez concluded that the entanglement hazard presented "very little risk to health and safety" and that the conveyor driveshaft needs to be evaluated as part of the larger machine (Dkt. #64 at p. 14; Dkt. #70 at p. 9). When viewing the conveyor system holistically, the alleged defective design was partly remedied due to other factors such as the presence of the metal fence. While the Court recognizes that there

11

are valid theories that may support an overall finding that the conveyor system was not unreasonably dangerous, the Court finds that this is a factual dispute for the jury.

The failure to include guards or some sort of cover on the conveyor driveshaft may be considered unreasonably dangerous as designed based on the facts presented. The question will be posed to the jury and for them to decide. For the purposes of this motion, Hall has provided sufficient evidence to show that the failure to include such guards was a hazard that could have been reduced. Accordingly, Hall's first argument will be denied.

### III. A Genuine Issue of Material Fact Exists Regarding a Finding of Causation

The final argument raised is that Hall cannot show that the Fence Defendants and their decision not to include a guard or protective cover is a producing cause or proximate cause of the incident in question. *See Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 222–23 (Tex. 2010) (discussing how the two terms—producing and proximate cause—are "in substance the same, except that there is added to the definition of proximate cause the element of foreseeableness"). This particular argument arises because one of the expert witnesses in this case admitted that "had [the fencing] been present on August 4, 2019, the Protective Fencing would have prevented access to the Conveyor Driveshaft and the Strangulation would have not occurred" (Dkt. #64 ¶ 13). The Court will construe the Fence Defendants' argument as contending that because one cause has already been identified, all other alleged defects cannot also be a producing cause or proximate cause. Hall correctly responds that although most of the liability may be attributed to the Witron Logistics in this case, that does not preclude other producing or proximate causes. *See* TEX. CIVIL PATTERN JURY CHARGES: MALPRACTICE, PREMISES & PRODUCTS, 70.1 (2022 ed.) ("There may be more than one producing cause."); *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001) ("More than one act may be the proximate cause of the same injury.").

The Court finds that there is sufficient evidence on the record for a jury to conclude that the decision not to include a guard or protective cover on the conveyor driveshaft could also be a producing cause and/or proximate cause of Sopcic's death. Simply because the existence of the metal fence may have prevented the entanglement does not mean that the existence of a guard or protective cover could have also prevented what eventually occurred. The question of producing cause and proximate cause is almost always a fact question that is submitted to the jury. *Perez v. Am. Med. Sys. Inc.*, 461 F. Supp. 3d 488, 506–07 (W.D. Tex. 2020) (producing cause); *Harris v. Nat'l Passenger R.R. Corp.*, 79 F. Supp. 2d 673, 676 (E.D. Tex. 1999) (proximate cause). The Court finds this case is no exception.

## CONCLUSION

It is therefore **ORDERED** that Defendants Witron Logistik + Informatik GmbH and FAS FörderAnlagen Systeme GmbH's Motion for Summary Judgment (Dkt. #64) is hereby **DENIED.**

**IT IS SO ORDERED.**

SIGNED this 29th day of June, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE